**Ramond EAMES**

v.

**Sargent PITCHER, Jr., District Attorney, et al.**

**Civ. A. No. 72–43.**

United States District Court, M. D. Louisiana.

June 23, 1972.

208

Murphy W. Bell, Robert C. Williams, Robert J. Eames, Bell, Williams & Eames, Baton Rouge, La., for plaintiff.

Cheney C. Joseph, Jr., Special Counsel for the State, Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This suit for injunctive relief grows out of a racial disturbance which occurred in the City of Baton Rouge, Louisiana, on January 10, 1972. Several people, including two Sheriff's deputies, Dewayne Wilder and Ralph Hancock, died of gunshot wounds during this incident. On February 10, 1972, a duly convened Grand Jury for the Parish of East Baton Rouge, Louisiana, returned two indictments against fourteen persons, including the plaintiff, Ramond Eames charging them with murder, and one indictment against fifteen persons, including said plaintiff, charging them with inciting to riot, all in violation of the laws of the State of Louisiana. This present action was brought on behalf of Ramond Eames seeking an injunction to enjoin the State of Louisiana from prosecuting him on the murder indictments. Jurisdiction is alleged to exist under 28 U.S.C.A. § 1343(3), (4); 42 U.S.C.A. §§ 1983 and 1985 and under various amendments to the United States Constitution. Plaintiff's main contention is that the murder indictments were not returned in good faith. Plaintiff contends that the only reason for the murder indictments was to allow the District Attorney to hold petitioner in jail without bond pending his trial on the charge of inciting to riot. Plaintiff alleges that the defendant, District Attorney Sargent Pitcher, Jr., abused "the prosecutorial powers vested in his office as District Attorney and chief legal counsel to the East Baton Rouge Grand Jury by causing and procuring a Grand Jury Indictment for Murder against and (sic) certain other black men with no hope of prosecutorial success." Petitioner further alleges "that the sole reason for bringing or procuring the said Murder Indictments * * * is to harass petitioner, inflame the community against him, and to deprive him of his liberty, pending trial on another Bill of Indictment charging violation of R.S. 14:329.1 which charge is bailable."

An evidentiary hearing was held before this Court, and now, after due consideration, it is the opinion of this Court that no injunction should issue herein.

In addition to hearing the testimony of twelve witnesses, including the foreman of the Grand Jury which returned the indictment, the District Attorney,

the Mayor President of Baton Rouge, the Clerk of the City Court, a Judge of the Nineteenth Judicial District Court, and others, the Court also ordered the defendants to submit to the Court for an in camera inspection tape recordings of the Grand Jury proceedings.

The function of the Grand Jury is not to determine the guilt or innocence of the accused. Nor is the District Attorney required to present all of his evidence to the Grand Jury. The function of the Grand Jury is to determine whether or not, from the evidence before it, there is probable cause to believe that a crime has been committed. In this case, after hearing the evidence presented to it, the Grand Jury returned three indictments against the plaintiff and others. An in camera review of the taped recording of the Grand Jury proceedings leaves no doubt in the mind of this Court that they were justified in doing so.

The United States Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, stated that:

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. * * *

"The precise reasons for this long-standing public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."

In a concurring opinion Mr. Justice Stewart said:

" * * * we hold that a federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution. Such circumstances exist only when there is a threat of irreparable injury 'both great and immediate.' A threat of this nature might be shown if the state criminal statute in question were patently and flagrantly unconstitutional on its face, * * * or if there has been bad faith and harassment—official lawlessness—in a statute's enforcement."

At the evidentiary hearing in this case, the Court reminded counsel for both sides that it did not intend to hear evidence pertaining to the guilt or innocence of the plaintiff. The hearing was concerned only with the questions of (1) whether or not the statutes involved were patently unconstitutional on their face, (2) whether or not the plaintiff had a remedy at law, (3) whether or not the plaintiff would suffer immediate and irreparable injury beyond that to which a person is ordinarily subjected in a lawful, good faith prosecution, and (4) whether or not the proposed prosecution in the State Court was a bad faith prosecution resulting from "official lawlessness" and for purposes of harassment rather than for purposes of lawful prosecution.

During the hearing the main thrust of plaintiff's position was that the District Attorney did not present certain evidence to the Grand Jury which, in the opinion of the plaintiff, would have resulted in a different conclusion by the Grand Jury. In support of this contention plaintiff produced several witnesses who testified generally that they were at the site of the disturbance on January 10, 1972; that they gave statements to the F.B.I.; that they were not called to testify before the Grand Jury; and that they did not agree with the indictments returned by the Grand Jury. But the evidence further showed that there were some prospective witnesses who were not called before the Grand Jury because they would not sign a waiver of Fifth Amendment rights before they testified.

Such waivers were required of all who testified and understandably so since this was an investigation into a large scale riot in which many of the 150 or 200 persons present might well have been called upon to explain their presence.

 An examination of the tape recording of the Grand Jury proceedings leads to the inevitable conclusion that the Grand Jury did, in fact, have ample evidence upon which to base the indictments for murder. Even though the plaintiff complains that there were available certain defense witnesses who should have been heard by the Grand Jury, nevertheless, as previously stated, the District Attorney is not required to produce all available evidence. As a matter of fact, the District Attorney rarely presents before the Grand Jury purely defense witnesses. He is only required to produce, and he usually only produces for the Grand Jury such evidence as he, in good faith, thinks is necessary to honestly and fairly apprise the Grand Jury of the facts necessary for them to determine whether or not there exists probable cause to believe a crime has been committed, and whether or not there exists probable cause to believe a certain person or persons has committed that crime. In the instant case, the testimony before this Court of the foreman of the Grand Jury which returned the indictments, and the actual tape recordings of the proceedings of that Grand Jury, leave no doubt that there was sufficient evidence before the Grand Jury for them to return the indictments complained of. Furthermore, the plaintiff produced no credible evidence of any kind to show that these indictments were the result of harassment or bad faith prosecution. The mere fact that the indictments were obtained prior to the hearing on a habeas corpus petition, and that the indictments resulted in the plaintiff being held on a non-bailable offense, simply cannot be regarded as sufficient evidence for this Court to enjoin the prosecution by a State Court based upon a valid indictment returned by a duly constituted Grand Jury. After due consideration of all of the evidence in this case, it is the conclusion of this Court that the statutes under which the State proposes to prosecute this plaintiff are not patently unconstitutional on their face; the plaintiff has his remedy at law by way of defenses to be raised during his criminal trial; the plaintiff will not suffer immediate and irreparable injury beyond that to which any person is ordinarily subjected in a lawful good faith prosecution for murder; and there is no showing of any kind that the proposed prosecution in the State Court is a bad faith prosecution resulting from official lawlessness or that the prosecution is for purposes of harassment rather than for purposes of lawful prosecution.

For these reasons, the plaintiff's request for injunctive relief will be denied and this case will be dismissed.